Okay, the next case on our call this morning is Agenda Number 4, Case Number 103-845, People of the State of Illinois v. Jesse Galan. Now, Ms. Sullivan, are you ready to proceed? I apologize, Your Honors. My name is Susan Sherrill Sullivan. I'm an Assistant Cook County State's Attorney, and I represent the people of the State of Illinois in this matter. We're here today, Your Honors, to ask this Court to reverse the Appellate Court's suppression of our evidence in this case. According to the Appellate Court, all the evidence has to be suppressed despite probable cause, substantive authorization under the statute, and felony fresh pursuit because Illinois police officers failed to comply with a post-arrest procedural provision of Indiana's fresh pursuit statute. I'd like to first focus this Court's attention on what's not in dispute in this case. There's no dispute that there was probable cause for the arrest, nor is there dispute that the officers were legitimately in fresh pursuit in this case. It's our position, based on these two propositions, that the inquiry can stop right here. With these two propositions, the arrest was sufficient under the Fourth Amendment Common Law Doctrine of Felony Fresh Pursuit. Therefore, it's not true, as the Appellate Court found, that the officers derived arrest authority from Indiana statute. It came from the Fourth Amendment and this Common Law Doctrine of Felony Fresh Pursuit. In which I might add, Your Honors, this principle has been a part of Illinois law since the late 1800s. More recently in this Court's dissenting opinion in Carrera, this Court recognized this principle. So, defendant's arrest in Indiana was wholly justified by the Fourth Amendment itself. I apologize. Even if we look to the statute, there's no dispute that there was compliance with the substantive provisions of the statute. The Indiana authorized our officers to effect this Felony Fresh Pursuit arrest in its borders. Nor is there any dispute that our officers didn't comply with the procedural provision. Well, back to your argument with respect to the no dispute as to the search being valid. Right. Is that, is your argument based at least in part on Indiana statute having that provision entitled construction? Which says, which provides the statute shall not be construed so as to make unlawful any arrest in the state which otherwise would be lawful? That's independent of the statute. Our argument with respect to the Fourth Amendment is completely wholly and separately apart from the statute itself. So, no construction issues whatsoever based on Indiana statute. The arrest was good. And that's this antecedent common law principle of Felony Fresh Pursuit that's part and parcel of the Fourth Amendment itself. I understand. Okay. I do have a construction issue with respect to that, Your Honor. And I'll turn now to the statute. As I was saying, substantively, we did comply with the statute. It's only this question of this procedural provision where our officers admittedly didn't comply with Indiana statute. So, the real dispute here is about the consequences of this noncompliance. Does the noncompliance of this post-arrest procedural provision of Indiana statute warrant the massive remedy of suppression that the Appellate Court found was mandated in this case? Well, we know it's not mandated pursuant to the Fourth Amendment exclusionary rule. The Fourth Amendment exclusionary rule simply is not at play in this case. Whether this Court views the procedural provision as a presentment provision, an extradition provision, or a hybrid of both, the Fourth Amendment simply cannot be used to invoke its exclusionary rule in this case. Nor is suppression prescribed by Indiana's fresh pursuit statute itself. And this is Your Honor's construction question, actually. The Appellate Court viewed this statute, this procedural provision, as a condition subsequent. So, our officers were substantively authorized, but because they didn't comply with this procedural provision, according to the Appellate Court, it undid the propriety of the arrest in the first instance. But this statute, in particular this procedural provision, it can't have extraterritorial force. It's not constitutionally compelled at all. So, it can't mandatorily render an arrest, an otherwise lawful arrest, an arrest in an Illinois prosecution unlawful. Also, looking at the statute itself, there's nothing expressly within the statute. There's no plain language in the statute that mandates suppression. In fact, for this court to read suppression into that statute, which is basically what the Appellate Court has done and what defendant wants this court to do, this court would actually be doing something contrary to what the Indiana legislature itself refrained from doing. Nor is suppression mandated implicitly in this case. And the only indications we have from the statute with respect to this implicit component is, as Your Honor referenced, this section 3.3, this construction provision, it comes immediately after the procedural provision that we're talking about. And what it does is it actually prohibits Indiana legislature itself, within the body of the statute that we're construing, prohibits the Indiana magistrate from construing the statute so as to make unlawful any arrest which would otherwise be lawful. Now, this is a pretty powerful implicit indicator that you can't use this provision to undo an otherwise valid arrest under the substantive component. This provision, what it does is it implies a policy on the part of Indiana in favor of lawfulness. The statutory intent, basically, is to protect the integrity of the arrest, which is in keeping with my second implicit component part of this statute, and that's the broader goal of the statute itself. The statute was designed to broaden, not constrict, the powers of extraterritorial arrest. The statute's goal is to facilitate apprehension of criminals who run for the border. It's not to protect them from prosecution, and it certainly shouldn't be construed by this Court in this instance as a sword to prevent the admission of constitutionally obtained evidence. The appellate court in this case basically found that there was no inherent authority to arrest. Is that correct? That's correct, Your Honor. Therefore, the construction portion of the statute had no meaning. I think they were saying that the only way our officers were entitled to effect this arrest was by virtue of the statute. So the inherent authority, which we dispute, obviously, because we say it's the Fourth Amendment solely and separately and apart from the statute itself. Fourth Amendment and common law doctrine of felony fresh pursuit. So the appellate court was saying the only way that this arrest is going to be good is through this Indiana statute, and moreover, the only way the arrest is going to be good is if it complies substantively and procedurally, which are perceived to be the conditions subsequent. So despite the fact that Indiana statute itself that we're construing doesn't prescribe the remedy of suppression that the appellate court found, the appellate court felt that suppression was compelled by this court's body of precedent in our related intrastate arrest precedent. But there's no authority within this body of law that mandates suppression in this parallel intrastate scenario. In fact, all the cases where suppression was ordered, and that includes this court's decision in Carrera, those arrests were not substantively authorized in Illinois. So it's a wholly different question than what we have here. We have a substantively authorized arrest. The question is just about what the noncompliance with this procedural provision means. So this body of Illinois precedent does not dictate suppression in our procedural violation alone scenario that we have here. In fact, looking to the decisional law of this court in other areas, this court has demonstrated an unwillingness to suppress in sort of these kind of analogous situations. This court's recent decision in Coleman, for example, that's under our wiretap statute in Illinois, our own wiretap statute, we have an explicit suppression remedy. And this court said, no, we're not going to suppress the evidence, because the federal authorities got it pursuant and legitimately to federal law. Similarly, and what I kind of view as a parallel scenario to this is this court's decision in Willis. This court refused to suppress also in Willis an otherwise constitutional confession based solely on a Gerstein violation, a Gerstein presentment violation. This court specifically rejected in Willis the lower court's reasoning, which is really similar to the reasoning put forth by defendant in this case. This court rejected the remedy of suppression based solely on a post-arrest delay in presentment. So that's this court's construction of our own law within Illinois that provides powerful, powerful authority to say no suppression in this scenario. What is the remedy, if any? The remedy in terms of the criminal prosecution in Illinois, Your Honor? Is there any? There's none within the confines of this prosecution, because the remedy that the Illinois courts in the criminal prosecution could only meet out would be suppression. And we say no. That shouldn't be the remedy. It doesn't foreclose defendant from availing himself of other forms of remedy, like the U.S. Supreme Court found in the recent decision, the not when it said there's no suppression in a not-going-to-announce violation. It relied and it went through multiple other avenues of remedy available to litigants aside from invoking the power of suppression. In this case, counsel, what would be an example? 1983 claim, for instance. And there's really nothing stopping defendant from going back to Indiana and saying, Indiana, my statutory rights in your state were violated. I'd like to get a remedy from you. He just shouldn't be permitted to come into our Illinois courts in his criminal prosecution and get his remedy in the form of suppressing evidence. It would hurt society at large. Is it of any significance, counsel, whether the officer knew or did not know that he was violating the rule? Is that a factor of any significance? The answer is perhaps. In this case, it's not, Your Honor, because we have, and the only evidence in this record, despite defendants' skepticism of this, is that our officers really didn't know that they had crossed that .8 into Indiana territory when they effected the arrest. There is no evidence. Nobody's testified they didn't know. Yeah, there is, actually. There's evidence by our officer on cross during the evidentiary proceeding. The evidentiary hearing in this case on the motion to suppress. Our officer specifically said, I didn't know. I thought I was in Illinois. But if you say I was in Indiana, I guess I was. In answer further to your question, Your Honor, that may play in the determination of this court is essentially going to be asked to decide violating other states' laws. What about the bigger picture of Indiana and Illinois law respecting each other, comedy, state important interests and sovereignty? Absolutely. That plays very heavily in this decision. Defendant has cited a Pennsylvania case, a Sedvari case, where exactly it went through this entire analysis that we're going through here and it decided, in Pennsylvania, we're going to suppress the evidence. There's plenty of other states, Your Honor. There's Colorado, Nebraska, New York, Ohio, Virginia, Washington, Wyoming, and most recently our neighbor, Iowa, and that additional authority I cited, that say, no, for our state, we're not going to suppress in the exact scenario. So, yes, interests of comedy play in, but other interests as well. We wouldn't necessarily be disrespecting Indiana by not giving their procedural provisions extraterritorial force in Illinois. What we'd be saying is, in Illinois, it's this court's decision and our legislature's decision to decide what evidence is going to come in or not in in our prosecutions.  We can tell them the rest of that statute we're not going to follow? That would not create relationships that could affect similar statutes here? No. I certainly don't think in this isolated incident. This is the only case that this court has actually had with this scenario. So, theoretically, our officers aren't out there willy-nilly violating Indiana and other states' laws. So, in terms of the larger question of us respecting other states, there really is no evidence of that to date. In Dentler and in the Bonds case out of Washington, some of the other cases that are favorable for us out of the other states, the court said, listen, we're going to not suppress for all the reasons that I'm making here today. It's not warranted. It's a massive remedy. The social costs are extraordinary in this case, particularly given the situation. It was inadvertent on the part of the officers. Everything about it was constitutional. And defendant himself would just be the windfall beneficiary of this sort of comedy situation. The only thing that was sort of affronted in this case was Indiana. So, to afford the remedy, this huge windfall remedy to our defendant, in this case suppressing all the evidence in an Illinois prosecution that realistically could not go forward without this evidence, is just not warranted in this case, Your Honor. It doesn't mean we're not respecting Indiana. It just means that in this case, in this state of the law, given what we know with respect to how our officers are actually complying with other states' laws by virtue of not being constantly presented with these kind of cases, we're going to say no here in this case. And that's what we asked this court to do. We asked this court to refrain from reflexively imposing the exclusionary rule in this case. I recall the facts. Once the defendant was brought back into Illinois, the police went to his home and searched his home and found additional drugs. Correct. What's the justification for that search? Consent. Both his own consent and his mother's. It's her home as well. And the basis for even seeking consent? They had this defendant under surveillance. They knew he was running a drug enterprise back and forth between these two houses. It's just because he ran for the border at this moment when they had him under surveillance that they knew that the surveillance was basically blown and they had to arrest him at that time. So then they brought him back to the house. They knew they had probable cause to know that the drugs were in there based on their surveillance. And they also then, Your Honor. Was there anything they saw about him, his actions, that would indicate any potential danger to them if they did not search his home? It's not necessarily a danger to him, Your Honor. It's that the evidence that we need to proceed in this prosecution we knew was in that house. And there's nothing unconstitutional, illegal, or even irrational about an officer trying to get, ask someone, will you consent? It's perfectly constitutional. That's what they did. Had everyone said no, then we would have had a different scenario. Then, theoretically, they would have gone and gotten a warrant. He was in cuffs at the time they sought this consent. They, yes. In the police car. No. This was in front of his home. They took him to his home and then asked for his consent. Correct. Correct. And I might add, Your Honor, with respect to that, the trial court had a full evidentiary hearing on that. Parties presented extensive evidence on that. The trial court didn't expressly say, I don't buy your consent argument. But by virtue of granting that motion to suppress at that moment, the trial court implicitly rejected that on the facts. Is that before us, though, that you should? Within the process of appellate review, Your Honor, affording the deference to the trial court that it's deserved in this case, the appellate court didn't even afford deference whatsoever to the factual findings of the trial court. Counsel, I'm not sure what your answer was to Justice Freeman's question. That's why I interrupted. Is the issue of whether or not the consent was appropriate before this court independent of the matter involving the Indiana arrest? Legally, yes. Factually, it comes with the deference afforded the trial court's finding. I don't understand that. What do you mean? The trial court, they put out a full evidentiary hearing on this motion to suppress, and it was comprised largely by their consent, their attempting to get the trial court to accept their theory that the consent was coerced. The trial court entirely denied the motion. Implicit in that, and this is not nothing out of the ordinary, implicit in that means that the trial court has rejected, based on the facts presented before it, all the theories and evidence that were put forth that are in keeping with the finding. The trial court said, no, I deny your motion. So implicitly, the trial court said, by the way, I'm not buying your consent defense. Otherwise, I would have granted your motion, at least with respect to the home. So that's what I mean. This court always, always has the power to review issues that come before it. They just come within the confines of appellate review. And in this case, the factual deference should be afforded the trial court who had the full evidentiary hearing. What you're saying is that implicit from the court's denial, there was a finding of fact in favor of the state? Correct. And that finding of fact should be reviewed with an abusive discretion standard? Is that your position? Our position is that, yes, it should be reviewed. On the historical facts, whether or not it was consent? Correct. And I raise that really only, Your Honor, that the evidentiary component of this case doesn't really prevent this court from getting to the legal issues that are presented in this case because we had the full evidentiary hearing. We had, the trial court had all that. And then this court, this case found its way to this court on this extraterritorial arrest and what sort of effect Indiana statute is going to have on our prosecution. But should this court, depending on whatever the legal findings this court makes on that issue, it can go ahead and then follow the logical chain of its finding, relying on what happened below in the trial court. Thank you, Ms. Sullivan. We ask this court to follow suit with these other states that I mentioned and to reverse the judgment of the appellate court. Thank you. Thank you. Mr. Adam. Good morning, Your Honors. My name is Sam Adam, and I represent the appellate. There were two searches in this case. The police followed the defendant into Indiana. They went to the Indiana toll booth on the Indiana toll road and arrested the defendant, took him out of his car, searched the car, and found marijuana. To suggest that the police did not know they were in Indiana won't pass the laugh test. They were right there at the Indiana, in the Indiana toll. They then took the defendant back. Let's stop there. The only evidence, though, was the police officer's testimony, right? He said he wasn't sure. That's what he said at the trial level. Right. He wasn't sure whether he was in Indiana. You're just saying that's not credible. I do say that's not credible. Do you agree with counsel that he was eight-tenths of a mile into Indiana? That's correct. That's correct. On the Indiana toll road, yes. Wasn't some rural district. While we're doing this, just so I can picture the facts, were they before the gate or after the gate when the stop was made? The toll gate. I didn't understand. Or at the toll gate. This all happened somewhere near Indiana. Apparently right before. He was waiting in line to go through the toll booth. Apparently that's what happened. They went back to Chicago with the defendant, searched the home, and found cocaine. Now, before we get to the merits of this, I would like to discuss with you the jurisdiction of this court to hear part of this case. The defendant filed a motion to suppress evidence. We've attached it in Appendix 2 to our brief. In that motion, he said only that he was moving to quash the arrest and suppress the evidence seized at the toll booth. Said nothing about the search of the home. Judge Surya, the trial judge, held a hearing and denied the motion to suppress the item seized from the car and denied the motion to quash. We have set forth in our brief in its entirety Judge Surya's findings of fact. He says nothing about the Burley Street address. That was not before him at that time. He then continued the case for the defendant to file a second motion to suppress with respect to the Burley Street address. Before that could be heard, the defendant filed that several weeks later. Before that could be heard, the defendant filed a motion to vacate the denial of the motion to suppress the item seized from the search of the car at the toll gate. The defendant argued to Judge Surya that the Indiana law governed. Judge Surya agreed with that, vacated his finding of guilt, of the denial of the motion to suppress, and the case was once again continued. The state then filed a motion to vacate the granting of the motion to vacate, or as they put it, a motion to reconsider that. In that motion that the state filed, they cited only their argument that the arrest of the defendant was legal, nothing about the Chicago address and the search of the home. The appellate court, Judge Surya denied that motion. The appellate court, as your Honor knows, affirmed the case. In doing so, the state filed a, before they did that, the state filed a notice of appeal. In the notice of appeal, the state said, quote, the trial court's granting of the defendant's motion to vacate the denial of the motion to quash and suppress evidence and the denial of the state's motion to reconsider. That's what they were appealing from. The state never, nor did the defendant, nor did the trial court, ever consider the search of the home in Chicago. That's not before the court. Mr. Adam, when the trial court vacated its denial of the defendant's first motion to quash and suppress, Yes, sir. did the trial court state that it likewise granted the defendant's motion to quash and suppress evidence on the house search? That came later. That came later. The state, the state, Well, if they never considered that, how is it? What happened was the judge only heard evidence on the motion to quash the arrest at the toll gate. He overruled that motion and later vacated that motion. When the state moved to reconsider that order, the trial court denied that motion to reconsider. At that point, the state and the defendant agreed that his ruling on the motion to quash the search of the home, the motion to suppress the search of the home would be the same. But that was never heard and never ruled. You can see from his findings of fact, he made no findings of fact with respect to that. All right. Well, it appears there's at least a stipulation as to the search of the home. Yes, there was a stipulation. There was a stipulation that the evidence would result in the granting of the motion to suppress because Judge Surya said that it would follow from the arrest and the failure to follow the Indiana law. But not any, but consent wasn't involved at all. Was there any dispute as to consent, though? No, there wasn't even, it was never heard. That motion was never heard. There was no evidence heard by Judge Surya from which he could make a finding with respect to consent, and he did not make any finding with respect to consent. Now, this is what the state's… You don't deny that the state's motion to reconsider addressed both the car and the house search. The state's motion to reconsider did address both the car and the house search, didn't it? I think it did. So at least in that way it was before the court. It may have been before the court that way. That's correct. Before we leave it, is it your understanding that the basis of suppressing the evidence from the house was the alleged unlawful arrest in Indiana? Yes, that's correct. Not anything else? Not anything else. Right. Was the arrest valid in Indiana? May I just hold up my answer to that question for a moment until I get to the merits of the appeal? Thank you, Your Honor. I appreciate that. Right now I just want to finish the jurisdictional point. In the petition for leave to appeal from the appellate court, this is what the state said to this court, upon which Your Honor is granted the petition for leave to appeal. A second motion regarding the Burley residence was filed and not ruled upon because the defendant subsequently filed a motion to vacate, which the people responded. Now that's on page 17 of our brief, and the state's petition for leave to appeal. They admitted that until we got into this court for briefing purposes. The state has never contended, up until they filed their brief in this case, after leave to appeal was granted, that there was any issue about the search of the Chicago or Burley Street address. It's right in their leave to appeal on page 12. I said 17. I meant on page 12. But why isn't it still an issue in light of the fact that the trial court ruled on it for whatever reason, for whatever's before him, based on the same reasoning as to the search of the car? I mean, there is a ruling in the trial court, right? Well, there is. There is a ruling on the question of the legality of the arrest and the subsequent taking of the defendant from Indiana to Illinois. And the trial court ruled that for the same basis as the exclusion of the search of the car, that same basis would apply to the search of the home. Yes, yes, that basis was, but it was no... I understand you're saying there's not testimony... Evidentiary hearing, but there is a ruling in the trial court. There is a ruling in the trial court, and I certainly would argue that the state has waived that by telling your honors in the petition for leave to appeal that that's not before you. I think they waived it in their petition for leave to appeal, if nothing else. Now, in People v. Smith, decided by this court two weeks ago, just two weeks ago, in a unanimous opinion, this court said, unless there is a properly filed notice of appeal, a reviewing court has no jurisdiction over the appeal and is obliged to dismiss it. In their notice of appeal, they stated clearly they were only appealing from the ruling by the trial court to quash the arrest and suppress the evidence relating to the search of the car. The facts of the Smith case, which your honors ruled on two weeks ago, and this case with respect to the notice of appeal are identical. Identical. In their notice of appeal, they said they were only appealing from the ruling of the trial court with respect to the motion to quash and the motion to refuse to reconsider it. Now, before I run out of time, I would like to get to the merits here. The Indiana fresh pursuit statute. How about answering my question? Yes, your honor. You're on the merits. Was the arrest in Indiana legal? Yes, in the Indiana law, yes, the arrest was legal. And was it legal under Illinois law? I don't think it would be because the officers were acting outside their jurisdiction. And this court has held at least twice that the statute, a police officer only has the right to make an arrest beyond that of a citizen pursuant to statute. There is hot pursuit considerations as well that may not be, and I know the one case was not, part of the evidence in the case. Yes, that's true. They are not necessarily comparable. This case involves hot pursuit at least under the Indiana statute and maybe under Illinois common law. It may be. So, I mean, there is a distinction between our former cases in this case, and that distinction is hot pursuit. To an extent it is, but I don't think, with all due deference to the question of Justice Garmon, I don't think we need to decide that because we conceded it was a proper arrest in Indiana. Indiana has authorized it. But you weren't quite so sure under Illinois law. No, I'm not quite so sure, but I think it's more or less superfluous, because he was a proper arrest in Indiana law. Considering that maybe we might disagree with you on that. Yes. Do you want to argue with us why that arrest was legal or illegal? No, I'd prefer not to, Your Honor. I'll assume it was. Let's assume it was. The police officers had authority under both Illinois and Indiana to go into Indiana and make an arrest. I'll assume that there was. The question is what then occurs. What then happens? Well, then I think Justice Fitzgerald asked you if that makes this distinguishable from our prior cases in Carrera and Lark. It may. And I don't think you answered that question. Well, I don't know of a case directly on it, and I hesitate to waive a point when I haven't really researched a point. And I don't think there is any case on it that I know of that I've ever read of the authority of a police officer to go and hot pursuit into another jurisdiction. But I guess I have to assume that they had that authority, although the statute doesn't give them that authority. And your layer case and so forth hold that you have to have a statutory authority to go beyond the right to an arrest beyond a citizen's right. So I have to assume that they had authority to go into Indiana, but I certainly know they had authority by Indiana law. Now, this court has held in the dog sniff case, People v. Cabelas, that this court will follow the law with respect to the Fourth Amendment as it is enunciated by the United States Supreme Court. In lockstep or in modified lockstep, we will follow that law, this court has said. In United States v. DeRay, in Michigan v. DeFilippis, and in Wyoming v. Houghton, all cited on pages 32 and 33 of our brief, the United States Supreme Court says clearly that the validity of an arrest depends upon the state in which the arrest took place. It's clear. DeRay has been in the law for 60 years, never changed, is the law, the law of the place of the jurisdiction where the arrest took place, governs the validity of the arrest. And if this court meant what it said in Cabelas, and I believe it did, and I'm sure it did, and I know it did, then the law is clear. This case depends upon the validity of the arrest at the place of the arrest, which was Indiana. The only answer the state has given us in the reply brief is, well, that law is outmoded. They say that on page 13 of their brief. But it's still the law, it's still the law of the United States Supreme Court. And that's why the argument that the state makes is more or less incomprehensible to me. If that's the law, and if this court has dedicated itself to follow the Supreme Court decisions in this area, then I suggest most respectfully to this court that the Indiana law governs. And under those circumstances, this court should follow the dictates of the Indiana law, which happen to be the dictates of the Illinois statute in this case, that the defendant arrested in hot pursuit by an officer from another jurisdiction, under those circumstances, will be taken before a judge of the jurisdiction where the arrest took place. That's what should have happened here. And I suggest most respectfully that if Your Honor rules in favor of the state in this case, that will authorize police officers to go into any jurisdiction. They go to Florida, Arizona, Maryland, Delaware, wherever. Just pick up somebody and bring them back to Illinois. But doesn't using the Fourth Amendment to suppress evidence in this circumstance encourage individuals to run for the border when the cops are after them? Well, I doubt if many of those individuals have read or will have read that law, but I would respectfully suggest that that's more or less a rare situation, that a decision of the court would encourage people to flee the jurisdiction. But even if it did, the hot pursuit doctrine covers that. Police have an absolute right to go into these jurisdictions. Mr. Adams, didn't Ms. Sullivan say that this was the first case of first impression, and this ever happened? First impression in Illinois, yes. I think she's right about that. So I suggested that... Isn't there a case out of the Fifth District? There was a case, yes. There was a case, People v. Jacobs, from the appellate courts many years ago where the police followed a young defendant, not a juvenile but young, into Iowa, and brought him back without taking him before the Iowa authorities. Your Honor is correct. And interrogated him in the police station and obtained a confession from him. And the appellate court of Illinois, I think it was the Third District, ruled that that arrest was illegal because they didn't follow the law of Iowa and take him before an Iowa judge. So there is some authority in Illinois on that, yes, but not from this court. It's the same with the appellate court in this case. It's very similar. Well, yes, of course, yes, yes, of course. Now I do want to say one thing before I close on this, and that is this. We have all been brought up with the idea that our word is our bond, that we're only as good as our word. We are people that have to rely upon our word. Illinois gave its word in this case. When they joined the pact, it adopted the Uniform Act. We gave our word, we follow it. The sovereign state of Illinois is no better than an individual in that regard. We said we would follow the law. The legislature enacted it. Forty-some states have joined it. And the law is clear. We will follow the Uniform Act. And we can't, and I argue and urge to you, we can't allow some police officers to violate the word of the state of Illinois. What about Ms. Sullivan's argument that she's not disputing the law, just the remedy? Well, I disagree with that statement. I think she's in error on that. I think she is disputing the law and disputing the remedy. So the remedy is exclusion? The remedy is exclusion. The remedy is exclusion. Mr. Adams? Yes, sir. I think you indicated that you thought the arrest would be lawful under Indiana law. Is that correct? Yes. So if the arrest is lawful and the police officers have followed the Indiana law and brought the person before a judge in Indiana, it would have been ruled lawful? I think it would have been. I think it would have been. So clearly what makes it unlawful is violation of that section. Right. I hesitate on that question for the reason that I don't know what the Indiana judge would have ruled on the motion to suppress. See, we're not allowed to contest probable cause in this court because that would be a cross appeal. The trial judge, having found that there was the motion to vacate the denial of the motion to quash, is what actually appealed to this court. So we cannot contest in this court the finding of probable cause. So I don't know what the Indiana judge would have ruled on probable cause. But assuming his ruling would have been that way, yes, Your Honor, that's what should have happened. Then what do you do with the construction section that says basically not complying with this doesn't make the arrest unlawful? Well, I would agree that it probably is a lawful arrest. It probably was. It did constitute probable cause. Had the officers followed him, by the way, I want to point out to Your Honor, we never would have gotten to the Burleigh Street address. They never would have gotten their so-called consent We never would have gotten to that point at all if they had been taken before an Indiana judge. But, of course, that didn't happen, and we're speaking hypothetically. I hope that answers Your Honor's question. Well, but I still don't understand why the construction section, if the arrest is lawful and failure to comply with the law doesn't make the arrest unlawful based on the construction section, why it isn't still a lawful arrest. Well, because I think that the section that I'm relying on, the section that requires the defendant be taken before an Indiana judge, I think that while it is a separate section, I think that's all part and parcel of the procedure that occurred here. And that basically is what some of the cases that I cited, such as Pennsylvania versus Saldivia and so forth, those cases, there simply is, there's no question, there is a split in the jurisdictions within the United States. The state has cited some and we've cited some, and there definitely is a split. Thank you, Mr. Edelman. Thank you, Your Honor. Rebuttal, Ms. Sullivan. Your Honors, briefly I'd like to address some of the points that counsel has made. First, Your Honor, Justice Fitzgerald, I'd like to address your question about Jacobs. Jacobs is not on all fours with this case, and specifically because the appellate court in this case got Jacobs wrong. The arrest in Jacobs was not substantively authorized, according to Iowa's fresh pursuit statute in that case. So this is a case of first impression. This is a case where we have this substantively authorized arrest, and the question is with respect to the procedure. Was the statute different then? The Indiana statute was not the same as it is now? The Iowa statute in Jacobs, actually if I remember correctly, and that actually goes to this Uniform Act issue that defense counsel is raising as well. Different states permit different things under their fresh pursuit statute. Some permit DUI fresh pursuit. Some permit traffic violations. Some limit it just to felonies. Some define their fresh pursuit, you know, more narrowly or more broadly. So specifically with respect to the question, substantively I do know that in Jacobs, the Iowa statute didn't permit what happened in that case because they had probable cause beforehand. Then they just went into Iowa and scooped them up. So it was no question about the felony fresh pursuit in the Jacobs case. There is a case, though, that's internally about our intrastate arrest, and I did not cite it in my papers, but I'd like to reference it if it's okay with your honors. It's a case called Owens, and it is out of the 5th District, and that's 323 Illap 3rd, 653. I just raise this because it's very similar to, it's not on all fours with our case because it doesn't have this interstate situation, but it has an extraterritorial arrest in Illinois that violated our statutes, and the court in that case said the notice provision in our statute at that time wasn't a hearing, it was just notify the authorities within the county. They didn't do it. And in Owens, your lower court said we're not going to suppress in that case. Ms. Sullivan? Yes. If an Indiana judge and an Illinois judge could rule differently on the defendant's arrest, can't they? Yes. Well, then, doesn't that discrepancy itself demonstrate the significance of the place where the defendant would get his hearing? I would actually argue the opposite, Your Honor. I would say that whatever Indiana is going to do with respect to them passing on the lawfulness of the arrest, assuming that it's just with respect to the probable cause determination, it's our view under the statute, it goes to Moore, it actually goes to whether or not it falls under the substantive component of the statute. But then our courts, and as happened in this case, they do their own Gerstein hearing, and that's what's significant in our internal prosecutions in Illinois. Okay. So this question of comedy, that – Ms. Sullivan, let me ask you on that comedy point, just to go back to Mr. Adams' argument and your response and reply on this uniform compact. Yes. He made the point that we have an obligation to comply and so forth. Your reply says it's just a uniform act and that's all it is, that there is no actual interstate compact. Now, in his brief, he did cite that we have adopted in Illinois the Uniform Act on Fresh Pursuit, and he gives the cite chapter 725. And in his footnote, he explains that we have – an officer has the authority to arrest in this state the same as they have the authority to go into the other state and arrest. Okay. So that statute does exist? In Illinois? Yes. Yes, we have one. We do have a fresh pursuit statute. Okay. Well, does that give officers of other states the authority to come here in the same way that we would have the authority to arrest in another state? Yes. As opposed to just in Illinois, Indiana. Illinois did adopt the Uniform Act, didn't it? They – Illinois enacted their version of – tailored to our case within Illinois, their version of the Uniform Fresh Pursuit Act. Yes, Your Honor. So under the Illinois Act, are we obligated to comply with Indiana law then? No. It's – the question of obligation is, I think, a – obligated mandatorily in terms of the extraterritorial force of law of another state is really what this case is about. It would – we do comply largely with other states' laws, as evidenced by the lack of this court being inundated with these kind of cases. The question really is, and it wouldn't upset comedy in answer to your question, Justice Freeman, because we're here trying to decide what Indiana statute says we should do in this case. But you can't – you wouldn't be able to – this officer wouldn't be able to get into Indiana with the – doing what they did, would they, without that statute? Fourth Amendment, Your Honor. Absolutely. So you would rely totally on the Fourth Amendment? Under these facts, it's our position that we really don't need to even go to the question of the statute in this case. But the statute, the Indiana statute, that's – it doesn't say suppression. That's what this whole case – this – whether or not we're violating Indiana's statute, substantively we know we're not, procedurally we know we have. It's not the question of compliance or noncompliance with Indiana's laws as a matter of comedy. It's a question in this prosecution whether or not we're going to suppress this evidence. In Illinois, in an Illinois prosecution, for an offense committed on our soil. That's equally a component of comedy, Your Honor. An internal decision within a state, policy-wise, to decide what evidence is in or out in their courts, in their prosecutions, is just as much a matter of states' rights and respect to other states as this question of whether or not we're going to wholesale, superimpose Indiana's entire body. Because that's what we could potentially be doing. We could be going down that slippery slope of saying, our choice of law rules now say we need to apply Indiana's procedural statutes. Do you want to touch upon with your time running out there, Ms. Sullivan, the jurisdiction argument as to the consent search at the home? Yes, I would, Your Honor. I – I trust that this court is going to go painstakingly through the record, bit by bit. When it does, it's going to bear out our version of events. Defendant filed a generic motion to suppress. Everyone, defendant, our counsel, the trial court, was under the impression, obviously, that the motion to suppress went to both the car and the home. They put on evidence, trial court made a finding, denied it. What happened was – Was there evidence of consent? Your Honor? Was there evidence of consent offered during that hearing? Absolutely. Absolutely. Defendant himself said, my mom said, search it. That's the third-party consent. That's never been contested. So, yes, there is definitely evidence of consent. Trial court ruled it, denied it, wholesale. What happened was they came in and they changed theories on the trial court. So they put this second motion to suppress out there, never asked them to rule on it, never did anything about it, then came in under the guise of a motion to vacate under the auspices of this case is still alive. This search we haven't addressed yet, when realistically and truly, based on the facts and the record, they did, presented a new theory, which is the theory we're talking about now, to the trial court. The trial court said, you're right, this thing is still alive, and I'm going to go ahead and change my mind based on your new theory, and I'm going to grant your motion. And that's what happened, and that's how this second motion to suppress got in this case. Your Honors? And that only dealt with the car? It did. It did. And then, by the way, when the trial court said, I'm going to grant your motion to vacate, on that same day, that June 8th date, which is what's noted in the notice of appeal, trial court called up and said, and perfunctorily said, by the way, I also deny your new second motion. And so these two things now, then we then file their motion for reconsideration addressing both. Trial court denied that. That motion is specifically noted in the notice of appeal as well. So based on all the principles of construing a notice of appeal, liberal construction, all of the principles in terms of construing these, it's perfectly legitimate. This court absolutely has jurisdiction over the home search in this case. And we never, by the way, waived it or conceded it wasn't in this case. I'd like to point out very quickly, Your Honors, that currently this issue of state law under DeRay that counsel says is unchanged and won't change for 60 years, it's currently before the U.S. Supreme Court substantively whether the arrest law of Virginia is going to govern the lawfulness inquiry under the Fourth Amendment. And that's a case called Virginia v. Moore. And it's number 061082. That's currently pending. It was argued mid-January of this year. So even this question, which we don't have in this case, obviously we don't have a substantive question, but it certainly bears watching in terms of the overall interplay in the context of this case, Your Honors. Thank you, Ms. Sullivan. Thank you. Thank you, Mr. Adam. Case number 103-845, People of the State of Illinois v. Jesse Gellin, is taken under advisement as agenda number four.